IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP GARRY BETHONEY,

    Plaintiff,

vs.                                                                 Civ. No. 05-0050 JP/DJS

CONTINENTAL CASUALTY
COMPANY, and HI ROBERTS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On January 14, 2005, Defendant Continental Casualty Company (CCC), with Defendant Hi Roberts' consent, filed a Notice of Removal of Civil Action. CCC raises two bases for federal jurisdiction in the Notice of Removal of Civil Action. First, CCC argues that the Employee Retirement Income Security Act (ERISA) completely preempts Plaintiff's claims, all of which are state claims. Second, CCC argues that there is diversity jurisdiction because Plaintiff fraudulently joined Defendant Roberts, a New Mexico resident, to defeat diversity jurisdiction.

On January 18, 2005, Defendants filed a Motion to Dismiss Complaint or for Summary Judgment (Doc. No. 2). The Defendants raise the issue of ERISA conflict preemption (as opposed to complete preemption) in the motion to dismiss or for summary judgment.[1] On February 9, 2005, the Plaintiff filed Plaintiff's Motion to Remand Cause to State District Court

---

[1] Plaintiff has not yet responded to the Defendants' Motion to Dismiss Complaint and for Summary Judgment for two reasons: 1) the Plaintiff could not conduct depositions until the Honorable Magistrate Judge Don Svet permitted the Plaintiff to do so at the June 7, 2005 initial scheduling conference; and 2) Judge Svet just recently ruled that Plaintiff's Amended Motion to Extend Time To Respond to Defendants' Motion to Dismiss/for Summary Judgment (Doc. No. 13), filed May 26, 2005, is now moot. *See* Order Regarding Plaintiff's Amended Motion to Extend Time to Respond to Defendants' Motion to Dismiss/for Summary Judgment (Doc. No. 19), filed Aug. 3, 2005.

(Doc. No. 5).² The Court notes that if the Court finds complete preemption for purposes of establishing federal jurisdiction, then the issue of conflict preemption raised in the Defendants' motion to dismiss or for summary judgment will be moot because under the complete preemption doctrine the state claims will have been deemed to have been replaced by an ERISA claim. *See Felix*, 387 F.3d at 1153-1158. Having considered the briefs and relevant laws, the Court finds that the Plaintiff's motion to remand should be denied, and that Defendants' motion to dismiss and for summary judgment should be denied as moot.

A. Background

Plaintiff alleges that while he was employed at Bob Turner Ford Country (Turner), he and other Turner employees were contacted by Defendant Roberts, an insurance agent acting on behalf of CCC, about participating in a CCC Group Long Term Disability Policy (CCC policy). After learning about the CCC policy, Plaintiff decided to participate in the CCC policy. Plaintiff alleges that Turner "made the CCC Group Long Term Disability Policy available to their employees, but did not endorse the policy, pay any part of the premiums therefor or assist or participate in the sale or servicing of the policy or the adjusting of any claims made under said policy. Turner only deducted premiums for the coverage from employees' paychecks and forwarded the premiums to either CCC or Roberts." ¶6 of Complaint for Breach of Contract, Insurance Bad Faith, Violation of the New Mexico Insurance Code, Violation of the New Mexico Unfair Practices Act, and Negligence (Complaint)(attached to Notice of Removal of Civil

---

²In response to Plaintiff's motion to remand, the Defendants also raise the issue of conflict preemption in addition to the complete preemption issue. The Court will not consider the conflict preemption issue with respect to the motion to remand because conflict preemption cannot support removal jurisdiction. *See Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1158 (10th Cir. 2004), *cert. denied*, 125 S.Ct. 2961 (2005).

Action).  Defendant Roberts, however, stated in an affidavit attached to the Notice of Removal of Civil Action that he sold the CCC policy to Turner for their employees and that Turner actively endorsed the policy so that the group premiums could be lower.[3]

Plaintiff further alleges that after he began participating in the CCC policy he became completely disabled with fibromyalgia syndrome in October 2002.  On November 11, 2002, Sandie Alexander, a Turner office manager, faxed Plaintiff's Short Term Disability Claim form to a CCC representative.  Ms. Alexander filled out that portion of the claim to be completed by the employer.  Ex. A (attached to Defendant's Memorandum in Support of Motion to Dismiss or for Summary Judgment (Doc. No. 3), filed Jan. 18, 2005).  On December 3, 2002, Ms. Alexander faxed to a CCC representative income and other information on behalf of Plaintiff regarding his claim for coverage.  Ex. B (attached to Defendant's Memorandum in Support of Motion to Dismiss or for Summary Judgment).  On January 2, 2003, February 6, 2003 and March 12, 2003, respectively, Ms. Alexander faxed to CCC representatives three more Short Term Disability Claim forms in which she filled out the portions of the forms to be completed by the employer.  Exs. C, D, and E (attached to Defendant's Memorandum in Support of Motion to Dismiss or for Summary Judgment).  On April 15, 2003, Ms. Alexander filled out a Physical Demands Analysis and faxed it to a CCC representative.  Ex. H (attached to Defendant's Memorandum in Support of Motion to Dismiss or for Summary Judgment).  Then, on August 11, 2003, Plaintiff's supervisor at Turner wrote a letter to CCC indicating that Plaintiff could no longer perform his job at Turner.  Ex. G (attached to Defendant's Memorandum in Support of Motion to Dismiss or

---

[3]The Court can look beyond the complaint in determining whether a plaintiff has artfully pled a lawsuit to avoid stating a federal claim by raising a state claim instead.  *See Pryzbowski v. U. S. Healthcare, Inc.*, 245 F.3d 266, 274 (3rd Cir. 2001)(citations omitted).

for Summary Judgment). CCC ultimately denied Plaintiff's claim for long term disability coverage.

Plaintiff brings the following claims in this lawsuit: 1) breach of contract by Defendant Roberts, 2) breach of contract by CCC, 3) violation of the duty of good faith and fair dealing by CCC, 4) violation of the New Mexico Insurance Code by CCC and Defendant Roberts, 5) violation of the New Mexico Unfair Practices Act by CCC and Defendant Roberts, and 6) negligence by Defendant Roberts.

B. Discussion

State claims can be removed to federal court and converted to federal claims under ERISA if ERISA completely preempts the state claims. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2494-96 (2004). In order for the doctrine of complete ERISA preemption to apply, the CCC policy must first be subject to ERISA. ERISA applies to "employee welfare benefit plans." ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. §1002(1). An "employee welfare benefit plan," however, is excluded from ERISA if it meets all of the conditions set forth in the "safe harbor" provision provided in 29 C.F.R. §2510.3-1(j). The safe harbor provision excludes plans from ERISA coverage "in which (1) no contribution is made by the employer; (2) participation in the program is completely voluntary for the employees; (3) the sole functions of the employer are to permit the insurer to publicize the program to employees and to collect premiums through payroll deductions; and (4) the employer

receives no consideration in connection with the program." *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997).

The Plaintiff contends that the safe harbor provision applies to the CCC policy, thereby excluding the CCC policy from ERISA coverage. The Defendants argue that the safe harbor provision does not apply and particularly focus on the third element of the safe harbor provision, as does the Plaintiff in his reply brief. The Defendants contend that Turner engaged in more activities with respect to the CCC policy than just publicizing the policy and collecting premiums through payroll deductions. In fact, this case is somewhat similar to *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991)(cited with approval in *Gaylor*, 112 F.3d at 463). In *Hansen*, the Fifth Circuit found that the employer did not meet the third element of the safe harbor provision based on the following facts: 1) the employer endorsed the plan when in distributing a booklet in its name the employer "encouraged employees to 'give the program careful consideration,' as it could be 'a valuable supplement to your existing coverages;'" and 2) the employer "employed a full time employee benefits administrator, who accepted claim forms from employees and submitted them to the insurer." In this case, Defendant Roberts stated in an affidavit that Turner "actively endorsed" the CCC policy. The Plaintiff did not rebut this statement with an affidavit or other evidence. Moreover, Ms. Alexander, a Turner officer manager, accepted Plaintiff's claim forms, filled in those portions of the claim forms to be completed by the employer, and submitted claim forms as well as a Physical Demands Analysis to a CCC representative. Like the employer's actions in *Hansen*, Turner's actions went beyond just publicizing the CCC policy and collecting premiums through payroll deductions. The Court, therefore, finds that the safe harbor provision does not apply to the CCC policy.

Although an insurance plan does not fall within the safe harbor provision, that plan may still fail to qualify as an "employee welfare work benefit plan" under 29 U.S.C. §1002(1). *Gaylor*, 112 F.3d at 463-63. Plaintiff, however, does not argue that the CCC policy fails to qualify as an ERISA plan, but only argues that the CCC policy is excluded from ERISA coverage under the safe harbor exception.[4]

Having found that the CCC policy is governed by ERISA, complete ERISA preemption will allow the removal of the state action if that state action falls within the scope of 29 U.S.C. §1132(a)(1)(B), ERISA's civil enforcement provision (also referred to as §502(a)(1)(B) of ERISA). *See Davila*, 124 S.Ct. at 2495-96. Section 1132(a)(1)(B) provides that a plan participant or beneficiary may bring a civil lawsuit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." The United States Supreme Court recently held the following regarding §1132(a)(1)(B):

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA- regulated employee benefit plan, and no legal duty (state or federal) independent of ERISA or the plan terms is violated then suit falls "within the scope of" ERISA §502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA §502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §502(a)(1)(B).

*Davila*, 124 S.Ct. at 2496. The essence of Plaintiff's claims in this case is "to recover benefits

---

[4] Plaintiff further argues that this case should be remanded to state court because state courts have concurrent jurisdiction with the federal courts in ERISA cases under 29 U.S.C. §1132(e). This argument is without merit. Defendants have the right to remove an ERISA case to federal court even if the state court has concurrent jurisdiction. *See, e.g., Cruthis v. Metropolitan Life Ins. Co.*, 356 F.3d 816, 818 (7th Cir. 2004); *LeTourneau v. General Motors Corp.*, 24 Fed. Appx. 332, 334-35 (6th Cir. 2001).

due to him under the terms of his plan," claims which could have been brought under 29 U.S.C. §1132(a)(1)(B).  *See* ¶9 of Complaint ("Bethoney properly and timely filed his claim for benefits under the CCC policy, but CCC has denied his claim and refused to pay him the policy benefits to which he is entitled.").  Moreover, the Plaintiff does not allege or argue that there is some duty the Defendants owe him which is somehow independent of ERISA.  The Court, therefore, finds that Plaintiff's state action falls within the scope of 29 U.S.C. §1132(a)(1)(B).  Consequently, that state action is completely preempted by ERISA.  This complete preemption provides federal question jurisdiction upon which to base the removal of the Plaintiff's state action to federal court.  Plaintiff's motion to remand will be denied on this basis.

Having found that there is federal question jurisdiction under ERISA, the Court need not address the issue of fraudulent joinder and the corresponding issue of diversity jurisdiction.  Since the complete preemption results in Plaintiff's state claims being converted into an ERISA claim, the Court also finds that Defendants' Motion to Dismiss Complaint and for Summary Judgment should be denied as now being moot.

IT IS ORDERED that:

1. Plaintiff's Motion to Remand Cause to State District Court (Doc. No. 5) is denied; and

2. Defendants' Motion to Dismiss Complaint or for Summary Judgment (Doc. No. 2) is denied as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE